**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LEER ELECTRIC, INC. and STEPHEN
C. LEER,

      Plaintiffs,

          v.

COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
LABOR AND INDUSTRY, ET AL.,

      Defendants.

CIVIL ACTION No. 1:08-CV-1785

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

      Now before the Court are Defendants' "Motion to Stay Pending Leer Electric, Inc.'s Administrative Hearing" (Doc. 11) and Plaintiffs' "Cross Motion to Stay Administrative Action" (Doc. 19).  For the reasons detailed below, the Court will deny both motions.

      The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

      Plaintiff Leer Electric ("Leer") is a contractor who does millions of dollars of work relating to public work projects. (Compl., Doc. 1 ¶¶ 11, 13.)  This work on public projects requires Leer to comply with Pennsylvania's Prevailing Wage Act (the "Act") which requires that workers on public projects be paid the prevailing minimum wage as determined by the Secretary of Labor and Industry.  Pa. Stat. Ann., tit 43 §§ 165-2(6), 165-4, 165-5. Approximately three years ago, the Pennsylvania Department of Labor and Industry ("DLI") began auditing Leer.  (Compl. ¶ 18.)  On June 15, 2005, the DLI issued an Order to Show Cause ("OSC") against Leer, commencing an administrative agency action to have Leer

"debarred" from future public works contracts due to alleged intentional violations of the Prevailing Wage Act.  (*Id.* ¶ 24.)  The DLI alleges that Leer underpaid its electrician employees by misrepresenting the type of work performed by these employees as general labor rather than electrical work.  (*Id.* ¶¶ 28-30.)  In 2007, Leer consulted with representatives at the DLI in effort to resolve the claims in the OSC, but in July of 2008, the DLI served Leer with a second OSC renewing the earlier allegations.  (*Id.* ¶¶ 35, 37.)

On September 26, 2008, Leer filed a complaint alleging that the DLI has persisted in its efforts to debar Leer from future public works projects "for no other reason than [Leer's] employees have chosen to exercise their Section 7 rights under the National Labor Relations Act. . . to remain non-union."  (*Id.* ¶ 41.)  According to Leer, decision makers within the DLI are former union business agents and representatives who were previously unsuccessful in their attempts to unionize Leer's employees.  (*Id.* 42.)  Leer alleges that these former union officials are now unlawfully using the authority of the DLI to carry out their plan to put Leer out of business for its decision to remain union-free.  (*Id.* ¶ 43.)  Stating that a debarment from public works contracts would destroy its business and require the company to lay off over one hundred (100) employees, Leer brings ten (10) counts against the DLI, including a count seeking a permanent injunction of the state proceedings, three counts brought pursuant to 42 U.S.C. § 1983 alleging violations of Leer's due process and equal protection rights, three counts alleging violations of Leer's due process and equal protection rights as guaranteed by the Pennsylvania Constitution, and counts for interference with business practices, civil conspiracy, and *respondeat superior* liability.  (*Id.*¶¶ 49-128.)

On October 20, 2008, the Defendants filed a motion to dismiss the Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6).  (Doc. 7.)  Shortly thereafter, on November 4, 2008, the Defendants filed a motion to stay the current proceeding pending Leer Electric's state administrative hearing.  (Doc. 11.) A corresponding brief in support was filed on November 18, 2008.  (Doc. 14.)  On November 19, 2008, the Plaintiffs filed their brief in opposition to Defendants' motion to dismiss, (Doc. 13), and on December 8, 2008, the Plaintiffs filed a cross motion to stay the state administrative action pending the outcome of the federal court litigation, (Doc. 19), with a corresponding brief in support filed on December 9, 2008, (Doc. 21).  The two motions to stay (Docs. 11, 19) have been adequately briefed and are currently ripe for disposition.

## DISCUSSION

**I.      Defendants' Motion to Stay Federal Proceedings Pending State Administrative Outcome**

The Defendants offer three arguments in support of their motion to stay the current proceeding pending the resolution of the state administrative proceedings underlying this case.   First, Defendants argue that the Eleventh Amendment to the United States Constitution prevents this Court from exercising jurisdiction over the Commonwealth of Pennsylvania and its agencies, including the Department of Labor and Industry.  Second, Defendants argue that the doctrine established by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), requires this Court to abstain from adjudicating Plaintiffs' claims. Finally, the Defendants argue that the claims in Plaintiffs' complaint are not currently ripe and that this Court should require Plaintiffs to exhaust administrative remedies before

3

seeking relief in this Court.

### A.      Eleventh Amendment

The Eleventh Amendment to the United States Constitutions provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against on the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  The United States Supreme Court has consistently held that this amendment bars suit against a state and its associated agencies by that state's own citizens.  *Edelman v. Jordan*, 415 U.S. 651 (1974); *Missouri v. Fiske*, 290 U.S. 18 (1923); *Hans v. Louisiana*, 134 U.S. 1 (1890).  The Supreme Court has especially extended Eleventh Amendment sovereign immunity to cases where plaintiffs seek monetary damages against a state or a state officer.  *See Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464 (1945) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants").  However, in *Ex parte Young*, the Supreme Court held that "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of [the Eleventh] Amendment." 209 U.S. 123, 154 (1908) (quoting *Smyth v. Ames*, 169 U.S. 466 (1898)).  In short, the *Young* court's holding established that the Eleventh Amendment does not bar suits against state officers to prevent violations against the laws or Constitution of the United States.  *Young*, 209 U.S. at 159-160.  The Supreme Court has subsequently applied this principle in several cases allowing federal courts to give injunctive

4

or "prospective" relief against state officers, even in instances when compliance with the injunction would require expenditure from a state treasury.  *See Edelman v. Jordan*, 415 U.S. 651 (1974) (articulating a prospective-retroactive relief distinction and allowing federal courts to order future compliance by state officials while forbidding those courts from ordering payment of compensatory damages for past harms); *see also Quern v. Jordan*, 440 U.S. 332 (1979); *Milliken v. Bradley*, 433 U.S. 267 (1977).  In *Pennhurst State Sch. and Hosp. v. Halderman*, a well-known decision from the *Younger* case progeny, the Supreme Court summarizes, saying that

> when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young*, such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority.

465 U.S. 89, 102-103 (1984).

In support of their motion currently before the Court, the Defendants rely on the *Pennhurst* court's further finding that "*Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law."  *Pennhurst*, 465 U.S. at 106.[1]  In response, the Plaintiffs acknowledge that the Eleventh Amendment does bar claims for monetary relief from individual Defendants in their official capacities and state that "Plaintiffs primarily seek

---

[1]  As a matter of note, Defendants' supporting brief is rife with what appear to be typographical citation errors.  While the Court need not identify every such error, in some instances the Court believes it is prudent to identify the error and what appears to be the intended citation.  Here, on page 6 of their Brief in Support, the Defendants cite to page 101 of the *Pennhurst* decision to support the proposition that "the Supreme Court concluded that a federal suit against state officials based on state law, is barred by the amendment when the relief sought has a direct impact on the state itself."  The text of page 101, while containing a review of Eleventh Amendment doctrine, does not support this proposition.  The *Pennhurst* decision does, however, offer support for this proposition at page 106 and, more directly, at page 117, and the Court will proceed with the assumption that the Defendants intended to cite to the passages on pages 106 and/or 117 rather than the general background section on page 101.

injunctive relief, not monetary relief. . .." (Pls.' Br. in Opp., Doc. 20, at 11.)  The Plaintiff's

further respond to the Defendants' argument by pointing out that "[i]t has been widely

recognized. . . that the 'jurisdictional limitation recognized in *Pennhurst* does not apply to

an individual capacity claim seeking damages against a state official, even if the claim is

based on state law.'" *Bangura v. City of Philadelphia*, No. 07-127, 2007 WL 3376676 at *4

(E.D. Penn 2007) (quoting *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d

87, 102 (2d Cir. 1998); citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 n. 4 (9th

Cir. 2004); *Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir.1994)).

In the current case, Leer brings claims under the due process and equal protection

guarantees of both the United States and Pennsylvania Constitutions and seeks relief in the

form of an injunction preventing Leer's disbarment along with the costs and fees of this

litigation and any other relief that this Court finds appropriate.   Accordingly, Plaintiffs'

complaint invokes this Court's federal question and pendant jurisdiction.  "[N]either pendent

jurisdiction nor any other basis fo jurisdiction may override the Eleventh Amendment.  A

federal court must examine each claim in a case to see if the court's jurisdiction over that

claim is barred by the Eleventh Amendment."  *Pennhurst*, 465 U.S. at 121.

Reviewing the complaint in the current case, the Court finds that the Eleventh

Amendment denies the Court jurisdiction over the plaintiff's claims brought under

Pennsylvania law.   As stated by the Supreme Court, "[a] federal court's grant of relief

against state officials on the basis of state law, whether prospective or retroactive, does not

vindicate the supreme authority of federal law."  *Pennhurst*, 465 U.S. at 106.  As such, if the

Court were to instruct the Pennsylvania officials on how to conform their conduct to

Pennsylvania law, it would engage in a practice that "conflicts directly with the principles of federalism that underlie the Eleventh Amendment."  *Pennhurst*, 465 U.S. at 106.

In contrast, however, the Court finds that the Eleventh Amendment does not bar jurisdiction over the claims that Plaintiffs bring pursuant to the United States Constitution. In Counts I, II, III, IX and X, Leer ask this Court to provide relief from the Defendants' alleged ongoing or imminent violations of the rights guaranteed to Leer by the Fourteenth Amendment to the United States Constitution.  The Plaintiffs pray for relief in the form of an injunction preventing what they allege to be a violation by state officials of the Plaintiffs' federal due process and equal protection rights.  This is the type of prospective relief that the *Edelman* and other courts have found to be unoffensive  to the federalism principles embodied by the Eleventh Amendment, and the Court may properly exercise jurisdiction over these claims.

### B.     *Younger* Abstention

In *Younger v. Harris*, the United States Supreme Court established an abstention doctrine by holding that federal courts may not enjoin pending state criminal proceedings. 437 U.S. 37 (1971).  In the line of cases that followed *Younger*, the Supreme Court made it clear that this doctrine of abstention is not specific to criminal matters, but also applies to state civil court and administrative proceedings.  *See Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1 (1987) (holding that federal courts may not enjoin state civil proceedings between private parties); *Ohio Civil Rights Commn. v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (holding that federal courts may not enjoin stat administrative proceedings when important state interests are involved); *Middlesex County Ethics Committee v. Garden State Bar*

7

*Association*, 457 U.S. 423 (1982) (first applying *Younger* to state administrative proceedings).  "The *Younger* doctrine. . .reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff."  *Moore v. Sims*, 442 U.S. 415, 423 (1979) (citing *Samuels v. Mackell*, 401 U.S. 66, 69 (1971)).  *Younger* abstention is appropriate when three requirements are satisfied.  *See Middlesex*, 457 U.S. at 432 (collecting and summarizing authorities to establish a three part test).  First, the federal plaintiff must be a party in an ongoing state proceeding of a judicial nature subject to interference by continued federal court action.  Second, the state proceeding must implicate important state interests.  And third, the federal plaintiff must have an adequate opportunity to raise constitutional challenges in the state court proceedings.

Not surprisingly, Plaintiffs and Defendants disagree as to whether the state administrative proceedings at issue in the current case satisfy these three requirements.  The Court now considers each requirement in light of the facts it has been presented thus far.  As the following three (3) sections explain in greater detail, the Court cannot currently find that the administrative proceedings at issue in this case satisfy any of the three *Younger* abstention requirements.

### 1.    Proceedings of Judicial Nature

In *Prentis v. Atlantic Coast Line Co.*, the Supreme Court stated that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist."  211 U.S. 210, 226 (1908).  In comparison, legislation "looks to the future and changes existing conditions by making a new rule to be

applied thereafter to all or some part of those subject to its power." *Prentis*, 211 U.S. at 226. These definitions of "judicial inquiry" and "legislation" have been consistently cited and reaffirmed by the Supreme Court in the one hundred years since *Prentis* was first decided. *See New Orleans Public Service, Inc. v Council of New Orleans*, 491 U.S. 350, 370 (1989); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 477 (1983); *Colorado Interstate Gas Co. v. FPC*, 324 U.S. 581, 589 (1945).

The parties in the current case strongly disagree on the question of whether the DLI administrative proceedings are judicial or legislative in nature. Defendants argue that the state administrative action is judicial in nature because the administrative hearing will determine whether Leer properly paid its workers. The Defendants specifically cite to the relevant state statutes authorizing the secretary to strip individuals or firms of their ability to contract with public bodies for a three year period following a hearing where it was determined that the individual or firm intentionally failed to pay the prevailing wage. 43 P.S. § 165-11(e); 2 Pa. C.S. §§ 501-507. In response, Plaintiffs argue that the administrative action is not judicial in nature because it will not determine whether Leer properly paid its workers. Instead, the Plaintiffs contend that the purpose of the administrative proceeding is to establish *de facto* pro-union legislation through the guise of a purportedly judicial proceeding.

These competing arguments ask the Court to classify the state administrative proceedings as judicial or legislative–an inherently fact-intensive process–in a case where there has, to date, been no factual development of the issue. Even though the state's Prevailing Wage Act and its associated procedural statutes initially suggest that the state

9

administrative proceedings are designed to enforce liabilities based on present or past facts under laws already in existence, the averments in Plaintiffs' complaint suggest that these ostensibly judicial proceedings are being employed for legislative effect.  At this early stage of the case, absent an answer to Plaintiffs' complaint by the Defendants, or any other factual development for that matter, the Court must take the Plaintiffs' averments as true, and for this reason cannot find that the state administrative proceedings are judicial in nature.

### 2.    Important State Interests

In *Middlesex*, the Supreme Court stated that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved."  457 U.S. at 432.  The Third Circuit Court of Appeals has further explained that "the strength of the State's interest in unrestrained performance of a legitimate governmental function as a means of effectuating its policy. . . (forms) the central consideration in an analysis of the propriety of abstention."  *Williams v. Red Bank Board of Education*, 662 F.2d 1008, 1016 (3d Cir. 1981) (quoting *Rosko v. Pagano*, 466 F. Supp. 1364, 1371 (D.N.J. 1979)).

The Defendants argue that important state interests are implicated in current case because Pennsylvania has an important and legitimate interest in regulating wages within the state.  Defendants support this argument by citing to the Supreme Court's decision in *Massachusetts v. Morash*, an opinion stating that States have traditionally regulated the payment of wages and that this state regulation is well situated within "the separate sphere of governmental authority preserved in our federalist system." 490 U.S. 107, 119 (1989)

(quoting *Fort Halifax Packing Co. v Coyne*, 482 U.S. 1, 19 (1987)).[2]

The Plaintiffs concede that the regulation of wages constitutes a legitimate state activity, but argue that the manner in which the DLI is administering the Prevailing Wage Act is not legitimate.  Instead of viewing the DLI's actions in the current case as a valid exercise of a state's power to regulate wages, Plaintiffs identify the pending state administrative proceedings as an attempt to put non-union contractors out of business by subjecting them to a hearing that is devoid of process and the outcome is pre-ordained. This view leads Plaintiffs to point out an important distinction within the *Younger* abstention doctrine articulated by the Third Circuit Court of Appeals.  In *Addictions Specialists v. Township of Hampton*, the Court of Appeals stated that "federal claims challenging the discretionary actions of. . . officials in making. . . decisions – as opposed to a claim challenging the state's. . . laws – [does] not implicate important state interests for *Younger* abstention purposes." 411 F.3d 399, 409-410 (3d Cir. 2005).  The Plaintiffs do not question the validity of Pennsylvania's Prevailing Wage Act.  Instead, they allege that the state administrative proceedings were instituted at the discretion of biased DLI officials seeking to deprive the Plaintiffs of their interests without the due process of law guaranteed by the United States Constitution.

The Court agrees with the Defendants that the regulation of wages within Pennsylvania constitutes an important and legitimate state interest.  However, the Court

---

[2]     As noted in note 1, *supra*, Defendants once again appear to make a typographical error in their citation.  In their supporting brief, Defendants cite to page 109 of the *Morash* opinion which contains the opinion's background section and does not support the proposition advanced in their brief.  In its reading of the *Morash* opinion, however, the Court does find support for Defendants' proposition at page 119 and will assume that Defendants intended to cite this passage rather than the general preamble found on page 109.

11

also agrees with the Plaintiffs' argument that the validity of the Prevailing Wage Act is not in question in the current case.  Instead, the federal action filed by the Plaintiffs concerns only the allegedly discriminatory actions of DLI officials.  In *Addictions Specialists*, the Third Circuit Court of Appeals identified precisely this type of action as not implicating important state interests for *Younger* purposes and, accordingly, the Court finds that important state interests are not involved in the current case.

### 3.   Adequate Forum for Constitutional Claims

The final *Younger* requirement is whether the federal court plaintiff will have an adequate opportunity to raise his or her constitutional claims in the state proceeding.  In support of its argument that Plaintiffs will be provided with an adequate forum to raise their constitutional claims, Defendants note that both state statutory and case law provide that on review, the Commonwealth Court is authorized to consider whether constitutional rights have been violated. *See Duffy v. Department of Labor & Industry, Prevailing Wage Division*, 634 A.2d 734, 735 n. 2 (Pa. Cmwlth. 1993) (stating in a review of a state administrative proceeding that the Commonwealth court's "scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence of record.").  The Third Circuit Court of Appeals has further stated that "[t]he Pennsylvania statutes concerning administrative law and procedure clearly provide for adequate judicial review of state administrative determinations."  *Ford Motor Co. v. Insurance Commissioner of Pennsylvania*, 874 F.2d 926, 933 (3d Cir. 1989).  The Third Circuit Court of Appeals found the "provisions of the Pennsylvania law to permit the assertion of the unconstitutionality of

a statute on judicial review of an administrative proceeding in which that statute has been applied. . .." *Ford Motor Co.*, 874 F.2d at 933.  Finally, the Supreme Court has held that "it is sufficient under *Middlesex*. . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding."  *Dayton Schools*, 477 U.S. at 629.

In contrast, the Plaintiffs argue that the state administrative process is defective, biased, and provides an inadequate opportunity to litigate their constitutional claims. In particular, Plaintiffs rely on *Gibson v. Berryhill*, a Supreme Court case where a group of optometrists filed a § 1983 action seeking to enjoin what they alleged to be an unfair state administrative proceeding because of a biased administrative board. 411 U.S. 564 (1973). The *Gibson* court declined to abstain, supporting its decision by stating that

> [t]o require the Plaintiffs to resort to the protection offered by state law in these cases would effectively deprive them of their property, that is their right to practice their professions, without due process of law and that irreparable injury would follow in the normal course of events.

*Gibson*, 411 U.S. at 571-572.  The Plaintiffs here argue that, much like the Plaintiff in *Gibson*, the DLI administrative process is so defective and biased by prejudgment that it deprives the Plaintiffs of due process.  Moreover, Plaintiffs argue that the Commonwealth Court review process touted by Defendants does not provide an adequate forum in the current case because, once Leer's public works business is removed by the DLI, Leer will be forced to close its doors and lay off its employees and the Commonwealth Court will be unable to restore Leer to its pre-disbarment position.

Once again the parties, through their competing arguments, ask the Court to reach a decision on an inherently fact-contingent issue when there has been no development of

the factual record in this case.  None of the documents filed with the Court offer any factual proof rising above mere allegations that the officials overseeing the DLI administrative proceedings either are or are not irreparably biased against Leer.  Without further factual development at this early stage of the litigation, the Court believes it must take the allegations in Plaintiff's complaint as true.  For this reason, the Court cannot find that the state administrative proceedings provide Leer with an adequate forum to raise its constitutional claims.

In summary, the Court is unable to find that the current case satisfies any of the three *Younger* abstention requirements, and for this reason, finds that the *Younger* abstention doctrine does not bar this Court from granting the injunctive relief Plaintiffs seek in their complaint.  Without further development of the underlying facts in this case, the Court must accept the averments set forth in Plaintiffs' complaint as true. Because of these allegations the Court is unable to find either that the state administrative proceeding is judicial rather than legislative or that the state administrative proceeding provides an adequate forum for the Plaintiffs' constitutional claims.  Accordingly, the first and third requirements for *Younger* abstention have not been sufficiently shown.  The Court also finds that the second *Younger* requirement is not satisfied and would be able to make this finding without taking the factual allegations of Plaintiffs' complaint to be true.   This is because Plaintiffs' complaint does not question the validity of a state law, but instead concerns only the potentially discriminatory acts of the DLI officials.   While there is no question that Pennsylvania has legitimate and important interests in regulating wages and enforcing the Prevailing Wage Act, Plaintiffs' claims challenging the DLI officials' discretionary actions does not implicate important state interests for *Younger* abstention purposes.  *Younger*

14

abstention only applies in those cases where all three of the just-discussed requirements are met, and since none of these requirements are currently satisfied, *Younger* does not require this Court to abstain in the current case.

      **C.**     **Ripeness**

      The so-called "ripeness doctrine" keeps courts from "entangling themselves in abstract disagreements." *Abbot Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). Cases must present "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)). When determining whether a case is ripe, courts generally examine "(1) the fitness of the issues for judicial decision, and (2) the hardship of the parties of withholding court consideration." *Khondara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quotation omitted). The Third Circuit Court of Appeals has also established a more refined test

> to determine whether [courts] will engage in pre-enforcement review in the context of a declaratory judgement action: (1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for conclusive legal judgment, and (3) the judgment must be useful to the parties.

*Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (citing *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990)).

      In order to determine if the first prong of this refined test is satisfied, "courts look to 'whether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm.'" *Id*. at 527 (quoting *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001)). Thus, a plaintiff need not "have suffered a

completed harm in order to establish adversity of interest so long as there is a substantial threat of real harm that remains throughout the course of the litigation." *Id.* (citing *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994)). In the current case, Plaintiffs face the imminent threat of an adverse ruling in an a state administrative proceeding that is allegedly constitutionally defective. Such a ruling will cause substantial harm to Leer and its employees, and the Court believes that this threat is sufficient to satisfy the first prong of the Third Circuit Court of Appeals test. As the Circuit Court noted in *Surrick* "the Supreme Court has repeatedly stated 'one does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough.'" 449 F.3d at 528 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The second prong of the refined test identified by the Third Circuit Court of Appeals requires the Court "to consider the fitness of the issue for adjudication to ensure that the declaratory judgement would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts." *Surrick*, 449 F.3d at 528. In the current case, the Court does not find that the Plaintiffs seek an advisory opinion. Their complaint alleges facts supporting a claim that Plaintiffs' Fourteenth Amendment due process rights have been and continue to be violated by the Defendants. The complaint also identifies a real harm resulting from the Defendants' actions as an adverse outcome in the administrative proceeding would preclude Leer from obtaining public works contracts for three (3) years. Accordingly, Plaintiffs do not attempt to proceed on a hypothetical set of facts, but rather ask the Court to determine the rights of the parties based upon already-

16

existing facts.  Thus, the Court finds that the second prong of the Third Circuit Court of Appeals test is satisfied.

The third, and final, prong of the refined test identified by the Third Circuit Court of Appeals requires that the Court "consider whether a declaratory judgment will affect the parties' plans of actions by alleviating legal uncertainty." *Id.* at 529.  More specifically, this prong is satisfied if "[a] grant or denial or relief would, therefore materially affect the parties and serve the purpose of the Declaratory Judgement Act – 'clarifying legal relationships so that plaintiffs . . . [can] make responsible decisions about the future.'" *Id.* (quoting *Step-Saver*, 912 F.2d at 649).  This prong is clearly satisfied in the current case.  A decision by this Court would resolve any uncertainties concerning the constitutionality of the pending state administrative proceeding, and would allow Leer to make responsible business decisions for the period following the currently-scheduled administrative hearing.

As the facts and circumstances present in the current case satisfy all three prongs of the refined test established by the Third Circuit Court of Appeals, the Court finds that Plaintiffs' claims are sufficiently ripe for review.

### D.    Exhaustion

"[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.  *Patsy v. Board of Regents*, 457 U.S. 496, 515 (1982); *see accord Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("the federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.").  Defendants attempts to distinguish *Patsy* from the case currently before the Court and suggest that Leer should be required to exhaust its

17

state administrative remedies before it pursues claims before this Court.  Defendants argue

that federal intervention is inappropriate because Plaintiffs are already a party to an ongoing

state administrative proceeding that implicates important state interests.  They support this

argument by citing to the Supreme Court's decision in *Dayton Schools*.  In particular, the

Defendant's cite to the Supreme Court's determination that federal abstention is appropriate

where the pending state action is "coercive rather than remedial, began before any

substantial advancement in the federal action took place, and involve an important state

interest."  *Dayton Schools*, 477 U.S. at 627 n.2.

Simply put, the Defendants "exhaustion argument" is a restatement of their *Younger*

abstention arguments that have already been discussed in great detail.  *Dayton Schools*

involved an application of *Younger* abstention principles, and the passage to which

Defendants specifically cite is found in a footnote discussing how "the *Younger* principle

applies to pending state administrative proceedings in which an important state interest is

involved." *Id.*  As the Defendants' state interest arguments have already been adequately

discussed and rejected in the *Younger* Abstention section, *supra*, the Court does not need

to revisit those arguments again here.

### E.     Summary

The Court finds that (1) the Eleventh Amendment does not bar jurisdiction over the

claims that Plaintiffs bring pursuant to the United States Constitution, (2) the *Younger*

abstention doctrine does not prevent the Court from hearing Plaintiffs' claims, and (3)

Plaintiffs' claims are not precluded by ripeness or exhaustion requirements.  Accordingly,

Defendants' motion to stay the current proceedings pending resolution of the state

administrative action will be denied.

**II.     Plaintiffs' Cross Motion to Stay State Administrative Proceedings Pending Federal Court Outcome**

Plaintiffs note that this Court has the power to enjoin state proceedings that threaten to deprive persons of constitutionally protected rights and that this Court must enjoin a state action that poses the risk of great and immediate irreparable harm.  Stating that the pending state administrative proceedings will, if allowed to proceed, destroy Leer's business, the Plaintiffs ask the Court to issue an injunction staying the state administrative proceedings pending the outcome of the current case.  Accordingly, the Court interprets Plaintiffs' cross motion seeking a stay of the state administrative proceedings as a request for a preliminary injunction enjoining the DLI from moving forward with disbarment proceedings against Leer and maintaining the current relationship between the parties until this Court can properly resolve Plaintiffs' constitutional claims.

**A.     The Anti-Injunction Act**

There are two independent barriers to federal court injunctions of state court proceedings.  First, the so-called "Anti-Injunction Act" states that "[t]he writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."  Rev. Stat. of 1874, ch. 12, § 720, 18 Stat. 134.  The second independent bar to federal court injunctions that enjoin state proceedings is the abstention doctrine established by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), which has already been thoroughly discussed in the prior sections of this memorandum.  Thus, even

though the Court has already detailed why *Younger* abstention principles do not apply in the current case, the Anti-Injunction Act serves as a barrier independent of *Younger* and the Court must determine that an injunction enjoining state administrative proceedings is not prohibited in this case.

The Anti-Injunction Act contains an exception to its general prohibition of federal court injunctions enjoining state proceedings in cases where such injunctions are "expressly authorized by Act of Congress." In *Mitchum v. Foster*, the Supreme Court specifically considered whether 42 U.S.C. § 1983 creates such an exception. 407 U.S. 225 (1972). In its review, the *Mitchum* court stated that statutes would be considered to allow injunctions if they "created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, which could be frustrated if the federal proceeding were not empowered to enjoin a state proceeding." *Id.* at 237. The Court specifically looked at the Congressional motivations for enacting § 1983 and found that Congress was "concerned that state instrumentalities could not protect [federally created] rights; it recognized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts." *Id.* at 242. As such, the Supreme Court found that "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people as guardians of the people's federal rights." *Id.*

Plaintiffs in the current action have brought their claims pursuant to 42 U.S.C. § 1983. Thus, the Court finds that the current case fits within an exception to the Anti-Injunction Act and the Court is not precluded from issuing an injunction that would stay the state administrative proceedings against Leer.

## B.    Standard for Preliminary Injunction

Federal Rule of Civil Procedure 65 allows for an equitable remedy of preliminary injunction.  In order to obtain a preliminary injunction, "the moving party must generally show: (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo."  *A.L.K Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761, 763 (3d Cir. 1971). The Court, when considering whether to grant a preliminary injunction, must also take into account "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."  *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 920 (3d Cir. 1974).  "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."  *P.C. Yonkers, Inc., v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (citing *Nutrasweet Co. v. Vit-Mar Enterprises*, 176 F.3d 151, 153 (3d Cir. 1999).  In short, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (3d Cir. 1997).

As previously mentioned in the Court's discussion of *Younger* abstention principles and their applicability in the current case, the motions currently before the Court, along with Defendants' motion to dismiss, were filed at an early stage of the litigation and there has been no factual development of the case beyond the allegations found in Plaintiffs' complaint.  Even though the Court believes the Plaintiffs have adequately shown that they will suffer an irreparable injury if the state administrative proceedings are not stayed, they

21

have not made an adequate showing that they will ultimately succeed on the merits of this case or how action by this Court might harm other interested persons or the public interest. Due to the paucity of facts presented, the Court is unable to perform a meaningful balancing of the four factors identified by the Third Circuit Court of Appeals and cannot grant the extraordinary remedy of a preliminary injunction. For this reason, Plaintiffs' cross motion to stay the state administrative proceedings will be denied.

## CONCLUSION

Because the Court is not prevented from adjudicating Plaintiff's claims by either the Eleventh Amendment or the *Younger* abstention doctrine, and because Plaintiff's claims are sufficiently ripe for review by this Court, Defendants motion to say these proceedings will be denied.

Because the Plaintiffs' motion effectively seeks a preliminary injunction, and because the Plaintiffs have not adequately shown a likelihood of success of the merits and have failed to present the Court with any evidence how the requested injunction might negatively impact other interested parties or the public interest, the Plaintiffs' cross motion to stay the state administrative proceedings will also be denied.

An appropriate order follows.


 December 23, 2008_____                    /s/ A. Richard Caputo_____
Date                                       A. Richard Caputo
                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEER ELECTRIC, INC. and STEPHEN C. LEER, | CIVIL ACTION No. 1:08-CV-1785 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF LABOR AND INDUSTRY, ET AL., | |
| Defendants. | |

## ORDER

Now, this  23rd  day of December, 2008, it is **HEREBY ORDERED** that:

1.    Defendants' "Motion to Stay Pending Leer Electric, Inc.'s Administrative

Hearing" (Doc. 11) is **DENIED**.

2.    Plaintiffs' "Cross Motion to Stay Administrative Action" (Doc. 19) is

**DENIED**.


                                                           /s/ A. Richard Caputo
                                                         A. Richard Caputo
                                                         United States District Judge