**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LEER ELECTRIC, INC. and STEPHEN
C. LEER,

      Plaintiffs,

          v.

COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
LABOR AND INDUSTRY, ET AL.,

      Defendants.

CIVIL ACTION No. 1:08-CV-1785

(JUDGE CAPUTO)

## MEMORANDUM

Now before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 7).  For the reasons detailed below, the motion will be granted in part and denied in part.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Plaintiff Leer Electric ("Leer") is a contractor who does millions of dollars of work relating to public work projects. (Compl., Doc. 1 ¶¶ 11, 13.)  This work on public projects requires Leer to comply with Pennsylvania's Prevailing Wage Act (the "Act") which requires that workers on public projects be paid the prevailing minimum wage as determined by the Secretary of Labor and Industry.  Pa. Stat. Ann., tit 43 §§ 165-2(6), 165-4, 165-5. Approximately three years ago, the Pennsylvania Department of Labor and Industry ("DLI") began auditing Leer.  (Compl. ¶ 18.)  On June 15, 2005, the DLI issued an Order to Show Cause ("OSC") against Leer, commencing an administrative agency action to have Leer "disbarred" from future public works contracts due to alleged intentional violations of the

Prevailing Wage Act.  (*Id.* ¶ 24.)  The DLI alleges that Leer underpaid its electrician employees by misrepresenting the type of work performed by these employees as general labor rather than electrical work.  (*Id.* ¶¶ 28-30.)  In 2007, Leer consulted with representatives at the DLI in effort to resolve the claims in the OSC, but in July of 2008, the DLI served Leer with a second OSC renewing the earlier allegations.  (*Id.* ¶¶ 35, 37.)

On September 26, 2008, Leer filed a complaint alleging that the DLI has persisted in its efforts to debar Leer from future public works projects "for no other reason than [Leer's] employees have chosen to exercise their Section 7 rights under the National Labor Relations Act. . . to remain non-union."  (*Id.* ¶ 41.)  According to Leer, decision makers within the DLI are former union business agents and representatives who were previously unsuccessful in their attempts to unionize Leer's employees.  (*Id.* 42.)  Leer alleges that these former union officials are now unlawfully using the authority of the DLI to carry out their plan to put Leer out of business for its decision to remain union-free.  (*Id.* ¶ 43.) Stating that a debarment from public works contracts would destroy its business and require the company to lay off over one hundred (100) employees, Leer brings ten (10) counts against the DLI, including a count seeking a permanent injunction of the state proceedings (Count I),  three counts brought pursuant to 42 U.S.C. § 1983 alleging violations of Leer's due process and equal protection rights (Counts II, III & IV), three counts alleging violations of Leer's due process and equal protection rights as guaranteed by the Pennsylvania Constitution (Counts V, VI & VII), and counts for interference with business practices (Count VIII), civil conspiracy (Count IX), and *respondeat superior* liability (Count X). (*Id.*¶¶ 49-128.)

On October 20, 2008, the Defendants filed a motion to dismiss the Plaintiffs'

2

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). (Doc. 7.) Defendants also filed a supporting brief along with the motion to dismiss. Shortly thereafter, on November 4, 2008, the Defendants filed a motion to stay the current proceeding pending Leer Electric's state administrative hearing (Doc. 11). Plaintiffs filed a brief in opposition to Defendants' motion to dismiss on November 19, 2008 (Doc. 13), and on December 8, 2008, the Plaintiffs filed a cross motion to stay the state administrative action pending the outcome of the federal court litigation (Doc. 19). The Court denied both motions to stay (Docs. 11, 19) in an Order dated December 23, 2008. The Defendants did not reply to the Plaintiffs' brief in opposition to their motion to dismiss. Accordingly, Defendants' motion has been fully briefed and is currently ripe for disposition.

<h3 style="text-align:center">LEGAL STANDARD</h3>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v.*

3

*Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will ultimately prevail.  *See id.*  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

**DISCUSSION**

I.    **Eleventh Amendment Sovereign Immunity**

In the current action, Plaintiffs bring ten claims against the Pennsylvania Department of Labor and Industry and four officials within the Department of Labor and Industry in those officials' individual and official capacities.  The Court has already extensively discussed the implications of Eleventh Amendment sovereign immunity with respect to these claims in the Memorandum accompanying the Court's December 23, 2008 Order denying Plaintiffs' and Defendants' respective motions to stay state and federal proceedings.  As the Court stated in its prior Memorandum:

> The Eleventh Amendment to the United States Constitutions provides:
>
>> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against on the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
>
> U.S. CONST. amend. XI.  The United States Supreme Court has consistently held that this amendment bars suit against a state and its associated agencies by that state's own citizens.  *Edelman v. Jordan*, 415 U.S. 651 (1974); *Missouri v. Fiske*, 290 U.S. 18 (1923); *Hans v. Louisiana*, 134 U.S. 1 (1890).  The Supreme Court has especially extended Eleventh Amendment sovereign immunity to cases where plaintiffs seek monetary damages against a state or a state officer.  *See Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464 (1945) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants").  However, in *Ex parte Young*, the Supreme Court held that "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of [the Eleventh] Amendment." 209 U.S. 123, 154 (1908) (quoting *Smyth v. Ames*, 169 U.S. 466 (1898)).  In short, the *Young* court's holding established that the Eleventh Amendment does not bar suits against state officers to prevent violations against the laws or Constitution of the United States.  *Young*, 209 U.S. at 159-160.  The Supreme Court has subsequently applied this principle in several cases allowing federal courts to give injunctive or "prospective" relief against state

officers, even in instances when compliance with the injunction would require expenditure from a state treasury.  *See Edelman v. Jordan*, 415 U.S. 651 (1974) (articulating a prospective-retroactive relief distinction and allowing federal courts to order future compliance by state officials while forbidding those courts from ordering payment of compensatory damages for past harms); *see also Quern v. Jordan*, 440 U.S. 332 (1979); *Milliken v. Bradley*, 433 U.S. 267 (1977).  In *Pennhurst State Sch. and Hosp. v. Halderman*, a well-known decision from the *Younger* case progeny, the Supreme Court summarizes, saying that

> when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young*, such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority.

465 U.S. 89, 102-103 (1984).

. . .

In the current case, Leer brings claims under the due process and equal protection guarantees of both the United States and Pennsylvania Constitutions and seeks relief in the form of an injunction preventing Leer's disbarment along with the costs and fees of this litigation and any other relief that this Court finds appropriate. Accordingly, Plaintiffs' complaint invokes this Court's federal question and pendant jurisdiction.  "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121.

Reviewing the complaint in the current case, the Court finds that the Eleventh Amendment denies the Court jurisdiction over the plaintiff's claims brought under Pennsylvania law.  As stated by the Supreme Court, "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst*, 465 U.S. at 106.  As such, if the Court were to instruct the Pennsylvania officials on how to conform their conduct to Pennsylvania law, it would engage in a practice that "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106.

In contrast, however, the Court finds that the Eleventh Amendment does not bar jurisdiction over the claims that Plaintiffs bring pursuant to the United States Constitution.  In Counts I, II, III, IX and X, Leer ask this Court to provide relief from the Defendants' alleged ongoing or imminent violations of the rights guaranteed to Leer by the Fourteenth Amendment to the United States Constitution.  The Plaintiffs pray for relief in the form of an injunction preventing what they allege to be a violation by state officials of the Plaintiffs' federal due process and equal protection rights. This is the type of prospective relief that the *Edelman* and other courts have found

to be unoffensive to the federalism principles embodied by the Eleventh Amendment, and the Court may properly exercise jurisdiction over these claims.

(Dec. 23, 2008 Memorandum and Order, Doc 22, at *4 -*7.)

In summary, the Court finds that the Eleventh Amendment bars all of Plaintiffs' claims, including claims for prospective relief in the form of an injunction, against the Pennsylvania Department of Labor and Industry.  Accordingly, L&I will be dismissed from Plaintiffs' suit.  The Eleventh Amendment also bars Plaintiffs' claims against the state officials brought pursuant to Pennsylvania law because an injunction instructing these state officials how to conform their conduct to Pennsylvania state law "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106.  Accordingly, Claims V through VIII will be dismissed with respect to Defendants Schmerin, O'Brien, Vito, and Risaliti.

However, the Eleventh Amendment does not bar Plaintiffs' attempts to obtain prospective relief in the form of an injunction preventing Defendants Schmerin, O'Brien, Vito, and Risaliti from enforcing the allegedly unconstitutional policies of the Department of Labor and Industry.  Since principles of federalism and state sovereign immunity do not bar federal court adjudication of these claims, the Court now turns its attention to Counts II, III, IV, and IX where Plaintiffs bring claims seeking injunctive relief pursuant to 42 U.S.C. § 1983.[1]

---

[1]

Count I of Plaintiffs' Complaint requests a permanent injunction, but contains no substantive allegations or statements.  The Court, thus, interprets Count I as a prayer for relief made in conjunction with Plaintiffs' other nine Counts and does not specifically address Count I in the following section.  Somewhat similarly, Count X brings a claim against the state agency under the doctrine of *respondeat superior*.  Since this claim is against the state agency, is barred by the Eleventh Amendment, and does not implicate the individual state officials, the Court need not discuss Count X in the following section.

## II.     Due Process

Defendants argue that Counts II and III of Plaintiffs' Complaint should be dismissed because they do not state viable substantive or process claims under the United States Constitution.  Their argument, with respect to both counts, is premised on their contention that Leer has neither a liberty interest nor a property interest in "bidding and working on public works projects in Pennsylvania," and therefore lacks the "fundamental right" needed for either a substantive or procedural due process claim.  With respect to Count II, Defendants further argue that the actions of the Department of Labor and Industry officials do not rise to the level of "conscience shocking" behavior that is required for executive action to constitute a substantive due process violation.  With respect to Count III, Defendants further argue that Leer is unable to establish that the pending Labor and Industry enforcement proceedings are inadequate and would constitute a violation of Leer's right to procedural due process.

The "initial inquiry [in a § 1983 action] must focus on whether the two essential elements. . . are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *rev'd on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  Plaintiffs and Defendants in the current action agree that the L&I officials' actions were conducted under the color of state law.  Accordingly, the question before the court is whether the Defendants' conduct deprived Plaintiffs of a right or privilege secured by the Constitution.

Counts II & III of Plaintiffs' Complaint alleges that the Defendants' actions "have

deprived, and will continue to deprive, Plaintiffs of their substantive due process rights afforded to every business under the Fourteenth Amendment to the United States Constitution." (Compl. ¶¶ 55, 62.)  As other courts in the Middle District of Pennsylvania have correctly noted, "[t]he deprivation of a property or liberty interest is a precondition to either a procedural or substantive due process claim."  *Labalokie v. Capital Area Intermediate Unit*, 926 F.Supp. 503, 508 (M.D.Penn. 1996) (Rambo, J.) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1981) (procedural due process context); *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell*, 53 F.3d 592, 598-601 (3d Cir. 1995) (substantive due process context)).  "It is settled law that there can be no property interest in obtaining future government contracts and that suspension or debarment from bidding on such contracts only implicates a liberty interest if it is based upon charges of fraud or dishonesty."  *Id*. (citing  *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357-58 (11th Cir. 1992); *Sutton v. United States Department of Housing & Urban Development*, 885 F.2d 471, 474-75 (8th Cir. 1989); *ATL, Inc. v. United States*, 736 F.2d 677, 682-83 (Fed. Cir. 1984)).  Similarly stated, "suspension or debarment from bidding on government contracts may violate a liberty interest if based upon charges of wrongdoing which compromise future employment opportunities." *Hoffman v. Lehman*, 926 F.Supp. 510, 514 (M.D.Penn. 1996) (Rambo, J.) (citing *Kartseva v. Dep't. of State*, 37 F.3d 1524, 1527-29 (D.C. Cir. 1994); *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993); *Bank of Jackson County*, 980 F.2d 1357-58; *Sutton*, 885 F.2d 474-75; *ATL, Inc.*, 736 F.2d 682-83).

Accordingly, the Court finds that Plaintiffs do not have a property interest in their

ability to secure future government contracts.  Plaintiffs do, however, posses a liberty interest in this ability.  The Court determines that this liberty interest exists in the current case based on Plaintiffs' allegations that the L&I officials' acts are fraudulent, dishonest, malicious, and performed in bad faith (Compl. ¶¶ 54, 56) and that these actions will compromise Plaintiffs' future employment opportunities (Comp. ¶¶ 26, 44).

Since the Court has found that Plaintiffs have a liberty interest in procuring and retaining government contracts, and since this interest is a fundamental right that entitles them to the Fourteenth Amendment's substantive due process protections, the Court turns to the second step of substantive due process review.  "[E]xecutive action violates substantive due process only when it shocks the conscience but . . . the meaning of this standard varies depending on the factual context."  *UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003).  The United States Supreme Court identified conduct most likely to support a substantive due process claim as "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property")).

In the current case, Plaintiffs' Complaint alleges that L&I officials are attempting to put Leer out of business as part of a personal, union-influenced agenda.  (Compl. ¶¶ 1-3.) Plaintiffs further allege that Defendants actions have been taken with the specific intent of interfering with Plaintiffs' ability to work on present and future public works projects and that these actions are fraudulent, dishonest, unlawful, malicious, and conducted in bad faith.

(Compl. ¶¶ 54-56.)  This alleged conduct undertaken with the intent to injure Leer and its employees, absent any justifying government interest, is precisely the type of "conscience-shocking" behavior identified by the Supreme Court in *County of Sacramento v. Lewis*. Because the Court has determined that Plaintiffs possess a liberty interest and because Plaintiffs' Complaint makes sufficient allegations of fact to raise a reasonable expectation that discovery will show that the L&I officials sought to deprive Plaintiffs of this interest through "conscience-shocking" behavior, the Court will not dismiss Count II of Plaintiffs' Complaint against Defendants Schmerin, O'Brien, Vito, and Risaliti.

The Court will now turn to the arguments raised with respect to Plaintiffs' Count III, procedural due process claims.  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-234 (3d Cir. 2006).  "Once it is determined that due process applies, the question remains what process is due. It has been said. . . often by [the Supreme] Court . . . that due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  The Supreme Court has stated that

> of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "The Third Circuit Court of Appeals has

11

found that 'a state provides adequate due process when it provides 'reasonable remedies to rectify a legal error by a local administrative body.'" *Schimes v. Barrett*, No. 3:07-cv-872, 2008 U.S. Dist. LEXIS 24878 (M.D. Penn. Mar. 27, 2008) (Munley, J.) (quoting *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988)).

In their motion and supporting brief, Defendants note that, before L&I begins enforcement proceedings, the Wage Act requires investigation of all complaints of prevailing wage underpayment on public works contracts, that L&I conducts an investigation, and initiates an action through an Order to Show Cause outlining the claims against respondents. Defendants argue that equally detailed procedural regulations govern the pre-hearing phase and any actual hearings, noting that respondents have the right to an attorney, participate in pre-hearing conferences, can obtain subpoenas for witnesses and documents, have the opportunity to present testimonial and documentary evidence, can cross-examine witnesses, and can procure a transcript of the hearing. Defendants further note that parties dissatisfied with the outcome of the hearing and the resulting decision by the Secretary are able to appeal the determination to the Prevailing Wage Appeal Board (PWAB), which is an independent entity. This appeals process offers further opportunity for parties to file briefs and present oral argument. Parties are able to further appeal PWAB decisions in the Pennsylvania Commonwealth Court. Based on this review, Defendants argue that the enforcement proceedings contain reasonable remedies to rectify any legal errors that may occur and do not deny Leer constitutionally sufficient procedure.

In response, the Plaintiffs first suggest that the Court should not decide the procedural due process issue until further facts are developed regarding the process afforded to Leer and its effectiveness. In the alternative, Plaintiffs argue that they have

12

adequately alleged that L&I's procedures do not satisfy due process requirements and represent that the *Mathews* test shows that the disbarment proceedings deny Plaintiffs their due process rights.

Reviewing Plaintiff's Complaint with respect to the three factors articulated in *Mathews*, the Court finds that they have sufficiently stated a claim that the disbarment proceedings instituted by L&I constitute a violation of Leer's right to procedural due process. As already discussed in great detail, *supra*, Plaintiffs have a liberty interest in their ability to retain and obtain public works contracts. Thus, in order to satisfy the first *Mathews* prong, Plaintiffs must allege that this liberty interest will be impacted by the official agency action. Plaintiffs' Complaint contains several averments detailing how disbarment will compromise their ability to bid on public works contacts and will require them to lay off numerous employees. (Compl. ¶¶ 26, 44, 45.) The Court believes that these averments clearly satisfy the first step in the *Mathews* analysis.

In order to satisfy the second *Mathews* prong, Plaintiffs' Complaint must contain allegations that show a plausible risk that Leer's liberty interest will be erroneously deprived through L&I's enforcement and disbarment proceedings. Considering Plaintiffs' Complaint in its entirety, the Court believes that Plaintiffs' Complaint satisfies this requirement because Plaintiffs allege that the L&I officials are sufficiently biased against Leer to pre-ordain the outcome of the disbarment proceedings. (Compl. ¶¶ 41-48, 56-58.) This alleged bias stems from the allegation that L&I simultaneously acts as investigator, prosecutor, and adjudicator. Addressing questions of when co-held prosecutorial and adjudicative roles create an unconstitutional risk of bias in administrative adjudication, the Supreme Court has

stated that a party alleging this type of bias

> must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Plaintiffs have made sufficient allegations that L&I officials' multiple roles as investigators, prosecutors, and adjudicators present a risk of actual bias.  Moreover, the Court finds that this risk is further magnified by Plaintiffs' allegations that the L&I officials are using the disbarment proceedings to further the interests of unions that formerly employed the L&I officials and still count them as members.

Having found that Plaintiffs' Complaint sufficiently alleges that Leer will erroneously be denied its procedural due process rights, the Court turns to the third and final *Mathews* factor and considers the government interest in the disbarment proceedings against Leer relative to the administrative burden that additional or substitute procedural requirements would entail.  *See Mathews*, 424 U.S. at 335.  The Court believes that there is no question that Pennsylvania has a clear and important interest in enforcing the Prevailing Wage Act to regulate wages and protect workers within the Commonwealth.  Plaintiffs also acknowledge this interest.  (Pls.' Br. in Opp. at *25.)  Thus, the question for the Court is whether the extra procedural safeguards sought by Plaintiffs are warranted in light of this important government interest and Plaintiffs' allegations of harm.

In their brief opposing Defendants' motion to dismiss, Plaintiffs represent that they are not seeking significant changes in procedure.  Rather, they suggest that the allegedly tainted procedures currently in place can be remedied to fully protect Plaintiffs' Fourteenth Amendment due process rights with minimal changes such as removing certain L&I

14

employees from the disbarment proceedings and making more provisions for greater oversight from the Pennsylvania Courts to provide clear lines between investigation, prosecution, and adjudication.  Count III of Plaintiffs' Complaint also suggests that the threat to Plaintiffs' due process rights can be remedied with minimal impact on government interests, specifically stating that "Plaintiffs' interest in being able to defend themselves is more significant than the government's in having to provide critical documents."  (Compl. ¶ 67.)   Accordingly, the Court believes that Plaintiffs' Complaint contains sufficient averments to present a plausible argument that their due process rights can be protected through additional procedural safeguards with little increased burden on the administrative agency and little or no harm to Pennsylvania's interest in enforcing the PWA.

In summary, the Court has found that Plaintiffs' Complaint provides sufficient allegations of fact to raise a reasonable expectation that discovery will reveal evidence that (1) Defendants are depriving Plaintiffs of an interest within the Fourteenth Amendment's protection of liberty, and (2) the procedures available to Plaintiffs fail to provide due process of law within the particular context of this case.  For these reasons, the Court will not dismiss Count III of Plaintiffs' Complaint.

**III.    Equal Protection**

Defendants argue in their motion to dismiss that Count IV of Plaintiffs' Complaint should be dismissed because it fails to state viable equal protection claim under the United States Constitution.   The Fourteenth Amendment to the United States Constitution commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  While "[t]his provision creates no substantive rights," *Vacco v. Quill*, 521 U.S. 793 (1997), it "directs that 'all persons similarly circumstanced shall

be treated alike," *Plyer v. Doe*, 457 U.S. 202, 216 (1982). "Only when a state 'adopts a rule that has a special impact on less than all persons subject to its jurisdiction' does a question arise as to whether the Equal Protection Clause is violated." *Holt Cargo Sys. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 825 (E.D. Penn. Mar. 23, 1998) (quoting *Alexander v. Whitman*, 114 F.3d 1392, 1406 (3d Cir. 1997)).

"The first step in an equal protection analysis is to ascertain whether the plaintiffs were treated differently than similarly situated entities." *Id.* (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Count IV of Plaintiffs' Complaint alleges that Leer, along with other non-union contractors in the Commonwealth of Pennsylvania, are being treated differently than other similarly situated contractors that do belong to a union because Defendants are maliciously prosecuting them simply because the Plaintiffs' employees have elected to remain non-union as they are entitled under Section 7 of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*. (Compl. ¶ 71.) They further allege that few, if any, disbarment proceedings conducted by the current L&I administration have been against unionized contractors. (Compl. ¶ 48.)

Defendants do not present any argument that Leer and other non-union contractors are not similarly situated with other contractors endorsing the union. Defendants do, however, argue that Leer has failed to show that Defendants have intentionally and purposefully discriminated against Plaintiffs based on their membership in a particular class. (Defs.' Br. in Supp. at *16.) This argument raises two issues for the Court's consideration. First, it suggests that Plaintiffs have not been treated any differently than other contractors in Pennsylvania. Second, it implicates the next required step in equal protection analysis

16

where an official action "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440; *see accord. Romer v. Evans*, 517 U.S. 620 (1996) (holding that if government action "neither burdens a fundamental right nor targets a suspect class, [the Supreme Court] will uphold the . . . classification so long as it bears a rational relationship to some legitimate end.").

Defendants explain that "prevailing wage rates under the Wage Act are set with union wage scales in mind." (Defs.' Br. in Supp. at *16-*17.) Accordingly, Defendants argue that "it would be entirely rational for L&I to focus its resources on enforcing the Wage Act against non-union contractors. . .." (*Id.* at *17.) In addition to this clearly stated "rational basis" argument, the Court further understands Defendants' argument to say that Plaintiffs and other non-union contractors have been subjected to enforcement proceedings under the Wage Act because the Wage Act itself was heavily influenced by union wage rates, a fact that makes compliance with the Wage Act inherently difficult for non-union contractors like Plaintiffs. Accordingly, the Court believes that Plaintiffs' and Defendants' competing arguments reduce Plaintiffs' equal protection claim to a single question: did Defendants bring disbarment proceedings against Plaintiffs simply because they are a non-union contractor, or did Plaintiffs' status as a non-union contractor make them particularly prone to PWA violations entailing non-discriminatory enforcement efforts by Defendants?

Resolving this question would require the Court's close examination of detailed facts that have not been presented. At this early stage of the case, however, Plaintiffs need only present sufficient allegations to raise a reasonable expectation that discovery will reveal evidence that they were treated differently from other contractors and that there was no

rational basis for this disparate treatment.   In Count IV and throughout their Complaint, Plaintiffs have alleged that Defendants have specifically targeted Plaintiffs due to their non-union status. (Compl. ¶¶ 41, 45, 71.)  Plaintiffs' have also included numerous averments that Defendants' actions have no rational basis.  (Compl. ¶¶ 43, 72.)  Based on these allegations, the Court finds that Plaintiffs have provided sufficient allegations of fact to state a claim that is plausible on its face, and for this reason the Court will not dismiss Count IV of Plaintiffs' Complaint.

## IV.    Civil Conspiracy

Courts have long recognized plaintiffs' ability to assert conspiracy claims under § 1983.   *See Holt Cargo Sys.*, 20 F. Supp. 2d at 843 (collecting and citing cases from numerous circuit courts holding that conspiracy claims may be properly brought under 42 U.S.C. § 1983).  "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right "under color of law." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  "It is a longstanding rule in the Third Circuit that a mere general allegation of conspiracy is insufficient . . . [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) (citing *Black and Yates, Inc. v. Mahogany Assoc., Inc.*, 129 F.2d 227, 231, 232 (3d Cir. 1942), *cert. denied*, 317 U.S. 672 (1942)).  "The plaintiffs must plead with particularity the "circumstances" of the alleged wrongdoing in order to place the

18

defendants on notice of the precise misconduct with which they are charged." *Id.* (citing *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir. 1984)).

In the present case, Plaintiffs' Complaint contains allegations that Defendants and union officials conspired to pursue debarment of non-union contractors, that Defendants furthered this policy by instituting debarment proceedings against Plaintiffs, and that Defendants conducted these activities under the guise of Pennsylvania state law in concert with union officials. (Compl. ¶¶ 2, 3, 7.) In their brief in opposition to Defendants' motion to dismiss, Plaintiffs further argue that this conspiracy was "evident" and "apparent" from the Defendants' former employment by labor organizations and continued membership in labor unions. (Doc. 13, at *34.) Plaintiffs do not, however, identify the union officials allegedly conspiring with Defendants. Nor do Plaintiffs' allege any facts relating to specific conversations, meetings or any other interaction between Defendants and union officials where a conspiracy was formed to deprive Plaintiffs of their constitutional rights. For this reason, the Court finds that Plaintiffs' Complaint does not contain sufficient allegations of fact to raise a reasonable expectation that discovery will reveal evidence satisfying the particularized pleading requirements for civil conspiracy claims. The Court will, accordingly, dismiss the claims in Count IX of Plaintiffs' Complaint.

### CONCLUSION

For the foregoing reasons, the Court will grant, in part, Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 7). Since the Eleventh Amendment to the United States Constitution bars suits in law or equity brought against a State, Counts I through X of Plaintiffs' Complaint are dismissed with respect to the Pennsylvania Department of Labor

and Industry.   Similarly, since the federalism principles embodied in the Eleventh Amendment bars federal courts from granting either prospective or retroactive relief against state officials on the basis of state law, Counts V through VIII of Plaintiffs' Complaint dismissed with respect to Defendants Schmerin, O'Brien, Vito, and Risaliti.  Finally, Count IX of Plaintiffs' Complaint will be dismissed with respect to Defendants Schmerin, O'Brien, Vito, and Risaliti since it does not contain sufficient allegations to state a claim of civil conspiracy.

Claims I, III, III, and IV of Plaintiffs' Complaint, as they pertain to  Defendants Schmerin, O'Brien, Vito, and Risaliti, remain in this case.

An appropriate order follows.


 January 30, 2009                                    /s/ A. Richard Caputo                        
Date                                                      A. Richard Caputo
                                                              United States District Judge

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEER ELECTRIC, INC. and STEPHEN C. LEER, | CIVIL ACTION No. 1:08-CV-1785 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF LABOR AND INDUSTRY, ET AL., | |
| Defendants. | |

**ORDER**

Now, this  30th  day of January, 2009, it is **HEREBY ORDERED** that Defendants Commonwealth of Pennsylvania Department of Labor and Industry, Stephen M. Schmerin, Robert O'Brien, Sandi Vito, and A. Robert Risaliti's Motion to Dismiss (Doc. 7) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' motion to dismiss Counts I through X of Plaintiffs' Complaint is **GRANTED** and Counts I through X are **DISMISSED** with respect to Defendant Commonwealth of Pennsylvania Department of Labor and Industry.

2. Defendants' motion to dismiss Counts V through IX of Plaintiffs' Complaint is **GRANTED** and Counts V through IX are **DISMISSED** with respect to Defendants Stephen M. Schmerin, Robert O'Brien, Sandi Vito, and A. Robert Risaliti.

3.      Defendants' motion to dismiss Counts I through IV of Plaintiffs' Complaint

is **DENIED** with respect to Defendants Stephen M. Schmerin, Robert

O'Brien, Sandi Vito, and A. Robert Risaliti.


                                            /s/ A. Richard Caputo
                                           A. Richard Caputo
                                           United States District Judge