**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEER ELECTRIC, INC. and STEPHEN C. LEER,<br><br>         Plaintiffs,<br><br>     v.<br><br>STEPHEN SCHMERIN, ROBERT O'BRIEN, SANDY VITO, A. ROBERT RISALITI, JOSEPH HICKEY, RICHARD SLAGLE, LOUIS BEEMER, PETER VON GETZIE, and JAMES HOLZMAN,<br><br>         Defendants. | CIVIL ACTION NO. 3:08-CV-1785<br><br>(JUDGE CAPUTO) |

**<u>MEMORANDUM</u>**

Defendants Hickey, Slagle, Beemer, Getzie, and Holzman (collectively, "Hickey") move for dismissal of plaintiffs' complaint.  Stephen Leer, an electrical contractor and President of Leer Electric, alleges that the Pennsylvania Department of Labor and Industry ("DLI") unfairly targeted his company because he runs a non-union shop.  He further alleges the "debarment" proceeding initiated by the DLI against him for allegedly violating the Prevailing Wage Act ("PWA") was pretextual. Leer alleges its real purpose was to force him out of business. Leer's amended complaint brings substantive and procedural due process claims, as well as an equal protection claim, all under 42 U.S.C. § 1983.

In the motion to dismiss, Hickey makes four arguments: (1) the complaint should be dismissed under the *Younger* doctrine; (2) defendants Holzman and Getzie have absolute prosecutorial immunity; (3) Leer's suit is really a malicious prosecution action, the elements of which he has failed to establish; and (4) the substantive due process claim fails because the allegations are not "conscience shocking."  The Court disagrees with all but the fourth argument, and will therefore grant the motion to dismiss in part and deny it in part.

Additionally, Leer moves to strike Hickey's reply brief as untimely and the Court will grant this motion.

## BACKGROUND

Leer Electric, Inc. is a non-union electrical contractor with over one hundred employees located in Dillsburg, Pennsylvania. Because of Leer's success in obtaining work on public projects, it alleges the pro-union DLI attempted to drive the company out of business. After a series of audits over four years, the DLI issued an Order to Show Cause ("OSC") in July 2008 and sought debarment. The OSC accused Leer of miscategorizing labor tasks so it could pay its employees less in violation of the PWA. If debarred, Leer would be prohibited from bidding on public contracts for three years. Before the administrative hearing, Leer filed this suit against the DLI and individual defendants. Defendants, citing *Younger*, moved to stay the action pending resolution of the administrative hearing. The Court denied the motion on the grounds that *Younger*'s three requirements were not met (Doc. 22).

After all claims against the DLI and the state law claims against the individual defendants were dismissed, Leer filed an amended complaint, adding new defendants. The amended complaint brought a claim for a permanent injunction, as well as for multiple constitutional violations. In March 2011, the Hearing Examiner in the state proceeding issued his Recommendation. While he found Leer underpaid some employees on several state projects, he concluded it was unintentional. Both sides are currently appealing the Recommendation.

Defendants Schmerin, O'Brien, Vito, and Risaliti then moved to have the case

dismissed (Doc. 38) in May 2011, again under *Younger* abstention. This Court denied the motion but did dismiss all claims against Sandy Vito. Hickey then filed a motion to dismiss in July 2011. The motion has been briefed and is ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

**I.    Hickey's Motion to Dismiss (Doc. 42)**

The Court will address each of Hickey's four arguments in turn.

### A.    *Younger* Abstention

This Court ruled in its previous order (Doc. 43) that it would not abstain from adjudicating this suit. In so ruling, the Court held that important state interests were not implicated and *Younger*'s "bad faith" exception applied. The Court sees no reason to reverse its previous decision.

In *Younger v. Harris*, the United States Supreme Court established an abstention doctrine by holding that federal courts may not enjoin pending state criminal proceedings. 437 U.S. 37 (1971). In the line of cases that followed *Younger*, the Supreme Court made it clear that this abstention doctrine is not specific to criminal matters, but also applies to state civil court and administrative proceedings. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) (holding that federal courts may not enjoin state civil proceedings between private parties); *Ohio Civil Rights Commn. v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (holding that federal courts may not enjoin state administrative proceedings when important

state interests are involved); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (first applying *Younger* to state administrative proceedings). "The Younger doctrine ... reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415 (1979) (citing *Samuels v. Mackell*, 401 U.S. 66, 69 (1971)).

Younger abstention is appropriate when three requirements are satisfied: (1) the federal plaintiff is a party in an ongoing state judicial proceeding subject to interference by continued federal court action; (2) the state proceeding implicates important state interests; and (3) the federal plaintiff has an adequate opportunity to raise constitutional challenges in the state court proceedings. *See Middlesex*, 457 U.S. at 432 (collecting and summarizing authorities to establish a three part test).

Federal claims challenging government action in *enforcing* state law, as opposed to claims challenging the *validity* of the laws themselves, do not implicate important state interests for *Younger* abstention purposes. *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005) (citing *Gwynedd Prop., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195 (3d Cir. 1992). In *Addiction Specialists*, state law and a township zoning ordinance restricted where a methadone clinic could be located. Plaintiff sued, claiming the law and ordinance were unconstitutional *and* selectively enforced. Reversing the trial court, the Third Circuit held that granting the injunction would *not* be tantamount to invalidating the policies because determining the selective enforcement claim would not touch the policies' validity. *Addiction Specialists*, 411 F.3d at 410.

Similarly, determining here whether Hickey selectively enforced the PWA would not impugn the law itself. The validity of the PWA is not in question; whether or not, out of

animus towards Leer, officials at the DLI used the PWA as a weapon against the company, however, is in question.  Bracketing the other two requirements, the Court finds this suit does not implicate important state interests.

Furthermore, there are exceptions to the *Younger* doctrine. Federal courts may intervene where the state court proceeding is conducted in bad faith or is motivated by a desire to harass, or where a state statute is flagrantly and patently unconstitutional. *See Huffman v. Pursue, Ltd.*, 420 U.S. 595, 611 (1975).  Courts have considered three factors in determining whether a prosecution is commenced in bad faith or to harass: (1) whether the prosecution is frivolous or undertaken "without a reasonable expectation of obtaining a valid conviction," *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6 (1975); (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights, *Younger*, 401 U.S. at 48; and (3) "whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions[.]" *Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir.1995) (citations omitted).

Leer claims the DLI initiated the administrative proceeding solely to force him out of business.  He alleges the DLI, made up of ex-union officials and union advocates, have ramped up prosecutions of non-union businesses, using the PWA to keep them from competing for public contracts. Leer additionally claims the DLI conducted its investigation in an inherently unfair and opaque manner, keeping him in the dark and misleading him into believing the investigation had been dropped while it built its spurious case.  In their zeal to have the company debarred, Leer further claims the DLI defendants arbitrarily reclassified employee work and then accused him of purposefully misclassifying it.  Based

6

on these allegations, the Court finds Leer has alleged a pattern of harassment which, if proven, falls squarely within *Younger*'s "bad faith" exception.

### B.      Prosecutorial Immunity

Defendants Von Getzie and Holzman are entitled to prosecutorial immunity for their "judicial" actions in the debarment action but not for their "investigatory" actions.

The Supreme Court first acknowledged the absolute immunity of prosecutors to § 1983 suits in *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976).  More than a mere defense to liability, prosecutorial immunity embodies the "right not to stand trial," and is properly raised in a Rule 12(b)(6) motion to dismiss. *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal citations omitted). Since the court begins with the presumption that qualified rather than absolute immunity is appropriate, a prosecutor bears the "heavy burden" of establishing entitlement to absolute immunity. *Odd*, 538 F.3d at 208 (internal citations omitted).  To overcome the presumption, a prosecutor must show that he or she was functioning as the state's advocate when performing the actions in question. *Id*. (internal citation omitted).  This functional analysis focuses on the nature of the function performed, not the identity of the actor who performed it. *Id*. (internal citations omitted).  Under this approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. *Id*. (internal citations omitted).  "Immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (internal citation omitted).

In *Burns v. Reed*, 500 U.S. 478 (1991) police investigators suspected a woman of

shooting her two sons. The woman consistently denied it and passed a polygraph test. The investigating officers, believing the woman suffered from multiple personalities, wanted to interview her under hypnosis. *Burns*, 500 U.S. at 482. They asked the prosecutor if this was an acceptable investigative technique, and he told them it was. Under hypnosis, the woman said the assailant was named "Kate" and the woman referred to herself by that name. Based on these statements, the officers asked the prosecutor if they had probable cause to arrest the woman and he told them they probably did. At a probable cause hearing for a search warrant the next day, the prosecutor told the judge that the woman had confessed to shooting her sons but did not mention the hypnosis or her other denials. *Id.* at 483. The judge issued the search warrant and the woman was subsequently charged with attempted murder. However, after the statements given under hypnosis were suppressed, the prosecutor's office dropped the charges and the woman eventually brought a § 1983 suit against the prosecutor and arresting officers.

Applying the functional analysis, the United States Supreme Court parsed the prosecutor's actions into two categories: (1) appearing as a lawyer for the state in a probable cause hearing to obtain a search warrant, and (2) providing legal advice to the police. *Id.* at 487, 492. As to the former, the prosecutor enjoyed absolute immunity. *Id.* at 487. As to the latter, however, the Court held: "[w]e do not believe ... that advising the police in the investigative phase of a criminal case ... qualifie[d] [the prosecutor] for absolute immunity." Id. at 493. Extending immunity to this activity would eviscerate the rule that a prosecutor's administrative and investigatory acts are not absolutely immune because "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision

8

whether to prosecute." *Id.* at 495.

Here, Leer's allegations stem not only from the debarment proceeding but also the investigation of Leer. Specifically, Leer alleges that Peter Von Getzie, an attorney with the Office of Legal Counsel who led the prosecution:

> participated with Defendant Hickey and other investigators in reviewing timecard descriptions by Leer workers and making determinations as to whether the time was properly classified and whether the time should be reclassified from laborer to electrical. Defendant Von Getzie was well aware that the charges against Leer had no merit, that the witnesses that had filed complaints were not credible and that the interpretations and classification decisions made by Bureau investigators, including Von Getzie, were arbitrary and unreasonable.

(Am. Compl. ¶¶ 58-9). Leer further alleges that James Holzman, the DLI's Deputy Chief Counsel, participated in and supervised Von Getzie's investigation. Following *Burns*, the Court finds Von Getzie's and Holzman's actions in providing the investigators with legal advice as to how to classify Leer's employees' time cards investigatory rather than judicial in nature. The attorneys gave this advice prior to the issuance of the OSC and to help further the investigation. Furthermore, the Court believes defendants reliance on the "prosecution" language in the amended complaint misplaced. What matters is the nature of the functions in question, not the plaintiff's gloss on them. However, given the fact-intensive nature of this inquiry, the Court does not foreclose reexamining this issue once the record is developed.

**C.    Malicious Prosecution vs. Fourteenth Amendment**

The Court does not agree with Hickey that Leer has brought a malicious prosecution action disguised as a Fourteenth Amendment suit, and that it should be dismissed for failing to plead all the elements of the former.

To succeed on a Fourth Amendment malicious prosecution claim under § 1983,

Plaintiffs must show that: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was instituted without probable cause; (4) defendants acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Shelley v. Wilson*, 152 Fed. Appx. 126, 129 (3d Cir.2005). Relatedly, under Pennsylvania law's wrongful use of civil proceedings statute:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. C.S. § 8351.

To prevail on a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must prove each of the following five elements:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Rockledge Dev. Co. v. Wright Twp.*, 767 F.Supp.2d 499, 502 (M.D.Pa. 2011) (citing *Sample v. Diecks*, 885 F.2d 1099, 1113-14 (3d Cir. 1989)).

According to the Equal Protection Clause of the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Two theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the "class-of-one" theory. The traditional theory protects a

plaintiff from discriminatory treatment based on membership in a protected class such as race. In contrast, under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows irrational and intentional differential treatment when compared with similarly situated individuals. *Yan v. Penn State Univ.*, No. 4:10-CV-212, 2010 WL 3221828, *4 (M.D.Pa. Aug. 13, 2010). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently than similarly situated individuals. *Id.* at *4. To assert a class-of-one claim, a plaintiff must demonstrate that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Id*. (internal citation omitted).

Here, Hickey argues that Leer is really bringing a malicious prosecution claim in the guise of Fourteenth Amendment claims. Hickey further argues that such a claim should be dismissed because the proceeding in question did not end in Leer's favor. While the Court does not find Hickey's gloss on Leer's allegations unreasonable, the Court also finds that Leer has sufficiently pled procedural due process and equal protection "class-of-one" causes of action.

### D.     The Substantive Due Process Claim

Additionally, Hickey argues that Leer has insufficiently pled its substantive due process claim. The Court agrees.

In choosing the appropriate standard to apply in analyzing a substantive due process claim against a government official, the Third Circuit typically employs the "shocks the conscience" standard. *Hunterson v. DiSabato*, 308 F.3d 236, 247 n. 10 (3d Cir.2002). Under this standard "[t]he relevant level of arbitrariness required in order to find a substantive due

process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times "conscience shocking" or "deliberately indifferent." *Id.* at 247.

Here, it would be extremely difficult to find the defendants' actions conscience shocking because the Hearing Examiner himself found that Leer underpaid some of its employees. Even though this Recommendation is currently being appealed, such a finding eviscerates Leer's substantive due process claim, based as it is on allegations that it has been baselessly accused of violating the PWA sheerly because it is a non-union shop. Therefore, the Court will dismiss this claim.

## II.     Leer's Motion to Strike the Reply Brief (Doc. 47)

Leer's motion to strike Hickey's reply brief will be granted. Under the U.S. District Court for the Middle District of Pennsylvania Local Rule 7.7, a reply brief must be filed within fourteen days after service of the brief in opposition. Here, the brief in opposition was filed August 22, 2011 but the reply brief was not filed until September 19, more than fourteen days later. Therefore, the Court will strike it.

### CONCLUSION

The Court will not abstain from dismissing the case owing to *Younger* abstention, will not grant Von Getzie and Holzman prosecutorial immunity for their investigatory actions, and will not dismiss the procedural due process or equal protection claims but will dismiss the substantive due process claim. Leer's motion to strike Hickey's reply brief will also be granted.

An appropriate order follows.

| | |
|---|---|
| 12/2/11 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEER ELECTRIC, INC. and STEPHEN C. LEER,<br><br>    Plaintiffs,<br><br>STEPHEN SCHMERIN, ROBERT O'BRIEN, SANDY VITO, A. ROBERT RISALITI, JOSEPH HICKEY, RICHARD SLAGLE, LOUIS BEEMER, PETER VON GETZIE, and JAMES HOLZMAN,<br><br>    Defendants. | CIVIL ACTION NO. 3:08-CV-1785<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this ___2nd___ day of December, 2011, **IT IS HEREBY ORDERED** that defendants' motion to dismiss (Doc. 42) is **DENIED in part and GRANTED in part** as follows:

    (1)    Defendants motion for the Court to dismiss based on *Younger* abstention is **DENIED**.

    (2)    Defendants Von Getzie and Holzman **DO NOT** have prosecutorial immunity for their investigatory actions.

    (3)    Plaintiffs' Fourteenth Amendment procedural due process and equal protection claims are **NOT DISMISSED**.

    (4)    Plaintiffs' Fourteenth Amendment substantive due process claim **IS DISMISSED**.

Additionally, plaintiffs' motion to strike defendants' reply brief (Doc. 47) as untimely is **GRANTED**.

                                                       /s/ A. Richard Caputo
                                                       A. Richard Caputo
                                                       United States District Judge